Selden, J.
It is unnecessary to pass upon the validity of. the redemption set up by the plaintiffs in this case. There are other conclusive objections to the title of the defendant. Assuming that the act of 1855 (Sess. Laws of 1855, p. 798, § 65) applies to the conveyance executed by the Comptroller to Mr. Lansing in January, 1856, such conveyance is made by that act presumptive evidence merely of the regularity of the sale and previous proceedings. This evidence is liable to be rebutted by proof that the assessment of the tax, or any other portion of the proceedings prior to the conveyance, was irregular and not in conformity to the statutory provisions on the" subject.
It appears by the certificate of the Comptroller, which was read in evidence without objection, that the sale, pursuant to which the deed of the Comptroller was executed, was made for taxes assessed in the years 1846,1847, and 1848. The assessment rolls for those years were produced upon the trial, from which it appears that the premises in question were assessed in each year, not as non-resident lands, but to one William Merritt, as a taxable inhabitant of the town of Black Bock. By referring to the statutes on the subject of the assessment and collection of taxes, it will be seen that at the time these taxes were levied there was no authority for the sale by the Comptroller of lands assessed to inhabitants of the town or district where the assessment was made. The remedy at that time, in case of the failure to collect any tax thus assessed, was prescribed by the Bevised Statutes (1 R. S., p. 403, § 27), which provided that, in case the taxes upon any land assessed to a resident should be .returned as unpaid, the supervisor of the town in which the land was situated should add a description thereof to the assessment roll of the next year, and should charge the same with the uncollected tax of the preceding year. *284 ' flie double t,ax was then to be collected in the same manner as if the whole had been assessed in the second year. This mode of accumulating the taxes returned afforded the only means of collecting the unpaid taxes upon the lands of residents, until the year 1850, when an important change was made.
Section 5 of the act in relation to the collection of taxes on lands of non-residents, passed April 10-, I860-(Sess. Laws* 1850), provides that in- case of the. return of any tax assessed to a resident owner as unpaid, the supervisor of the town or ward shall add a description of the lands to. the assessment roll of the next year, “in the part thereof appropriated to taxes on lands of non-residents, and shall charge the same with the uncollected, tax of the preceding year.” It then directs that “ the same proceedings shall be had thereon, in all respects, as if it was the land of a non-resident, and as if inch tax had ‘been laid;in the. year in which the. description is so added.”
This act was repealed by the act of April 18, 1855; but section 5 of the latter act (Sess. Laws of 1855, p. 782) substantially rebnacts. the provision. Both these statutes are purely prospective in their terms, and neither has any application to lands returned -to the Comptroller prior to April 10, 1850. The precise .period when the lands in question here were returned does not appear-; but it is undoubtedly to be inferred that they were returned before that data. If not returned prior to that time, the amount of the tax- must have been equal to the aggregate of all the taxes upon the premises from 1846 to 1.850, as the statute -then, in force required the taxes to-be accumulated from year to year; as we have already seen. But the sum for which the- land was sold shows, that this had not been done. Assuming, then, as I think; wé may,, that the return of this land for the unpaid taxes of 1846, 1847, and 1848, was made prior to April, 1850, its sale by the Comptroller was wholly unauthorized by any law, and the deed executed pursuant thereto was consequently void.
But there is another reason why the sale in question, if otherwise regular, could not be sustained. The assessment was made in the name of a person having neither the owner *285 ship nor possession of the land, nor, so far as appears, any interest in or connection with it. The mode of assessing lands is prescribed by the Revised Statutes (1 R. S., p. 389, §§ 1, 2 and 3). These sections provide as follows:
“ § 1. Every person shall be assessed in the town or ward where he resides when the assessment is made, for all lands then owned by him within such town or ward, and occupied by him, or wholly unoccupied.
“ § 2. Land owned by a person residing in the town or ward where the same is situated, but occupied by another person, may be assessed in the name of the owner or occupant.
“ § 3. Unoccupied lands, not owned by a person residing in the ward or town where the same are situated, shall be denominated lands of non-residents,’ and shall be assessed as hereinafter provided.”
These sections require that, if the owner resides in the town ' or ward, the lands shall be assessed to him, unless they are actually occupied by another, and then they may be assessed either to the owner or occupant. If the owner does not reside in the town or ward, they must be assessed as non-resident lands. The provisions are imperative. There is no authority whatever for making the assessment otherwise than as they direct. The provision in section 2, that the lands may be assessed either to the owner or occupant, would be wholly nugatory if they could be legally assessed to one who is neither owner nor occupant. The supposition entertained by the counsel, that the assessors have jurisdiction in consequence of their obligation to assess all the lands in the town or ward, and that, if they make due inquiries, and assess according to the best information they can obtain, their action cannot be impeached in any collateral proceeding, is erroneous. A warrant, issuing from the proper source and regular upon its face, may protect the collector. But the assessors have no jurisdiction to assess except as the statute prescribes; and unless they pursue the directions of the statute, the assessment is unauthorized and void.
*286 If lands belonging either to a resident or a non-resident qould be assessed to a third person having no connection with the premises, and if such an assessment could be made the foundation of a sale and conveyance of the lands by the Comptroller, great inconvenience and injustice might result. The true owner would be misled. He would have no notice of the assessment or of the proceedings upon it, and it would require extraordinary vigilance to discover and trace out such proceedings. The law protects the owners of property from being placed in such a position, by requiring that, when they are to be divested of their title to such property by any statutory proceeding, the directions of the statute must be strictly pursued. (Sharp v. Spier, 4 Hill, 76; Sharp v. Johnson, id., 92.)
Upon each of the grounds here suggested, the sale and conveyance of the premises in question by the Comptroller was unauthorized and void; and as the plaintiffs proved'upon the trial a valid title, which appears to be wholly unimpaired except by the Comptroller’s sale, the judgment of the Superior Court of Buffalo should be affirmed.
All the judges concurring,
Judgment affirmed.